UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA ELENA URIBE VARGAS, | No. 1:26-cv-03332-DJC-SCR |
| Petitioner, | |
| v. | ORDER |
| WARDEN, CALIFORNIA CITY CORRECTIONAL CENTER, et al., | |
| Respondents. | |

Petitioner Maria Elena Uribe Vargas brings a Petition for Writ of Habeas Corpus and a Motion for Temporary Restraining Order challenging the legality of her detention. The Court informed the parties that it intended to rule on the merits. As explained below, the Petition is DENIED.

**BACKGROUND**

Petitioner Maria Elena Uribe Vargas, a citizen of Chile, lawfully entered the United States on a student visa in June 2022. (Pet. (ECF No. 1) at 3; MTD at Ex. 1 (ECF No. 7) at 8.) She has remained physically present in the country since that time. (Pet. at 3.) Her student status lapsed after January 26, 2023, when her course of study was allegedly canceled. (Ex. 1 at 9.) Prior to her detention by immigration authorities, Petitioner resided in a leased residence in Miami, Florida, with her children, one of

1

whom is diagnosed with autism spectrum disorder, and her lawful permanent resident partner.  (Pet. at 3.)  Petitioner is authorized to work and has been employed as a caregiver providing home health services.  (*Id.*)

In December 2025, Petitioner was arrested for a misdemeanor charge of battery.  (Pet. at 3; MTD at Ex. 2.)  Following her arrest, she was detained by immigration authorities and is in custody at California City Detention Center.  (Pet. at 3-4; MTD at 3.)  With the assistance of an immigration attorney, Petitioner received two bond hearings before an Immigration Judge.  (MTD at Exs. 3, 4.)  At the first bond hearing, the Immigration Judge denied bond based on Petitioner's alleged danger to the community.  (MTD at Ex. 3.)  At the second bond hearing, the Immigration Judge denied bond based on Petitioner's alleged flight risk.  (*Id.* at Ex. 4.)  On April 30, 2026, an Immigration Judge denied Petitioner's asylum application and ordered her removed to Chile.  (*Id.* at Ex. 6.)

On April 30, 2026, Petitioner filed a Petition for Writ of Habeas Corpus and Motion for Temporary Restraining Order in this Court.  (*See generally* Pet.)  On May 7, 2026, Respondents filed a Motion to Dismiss.  (*See generally* MTD.)  Petitioner filed a Reply, and the Court directed Respondents to file a Sur-Reply.  (Reply (ECF No. 8); Sur-Reply (ECF No. 10).)  Respondents also lodged audio recordings of the bond hearings.  (ECF No. 11.)

**LEGAL STANDARD**

In constitutional challenges to an Immigration Judge's detention determination, a habeas court generally reviews mixed questions of fact and law under an "abuse of discretion" standard.  *Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024).  This type of review does not involve "reweigh[ing] evidence" but rather determining whether the Immigration Judge "applied the correct legal standard."  *Id.* (citation and quotations omitted).  "In reviewing the IJ's determination, a district court may not second guess the IJ's weighing of the evidence. . . review is limited to whether the IJ's decision 'reflects clear legal error or is unsupported by sufficient evidence.'"  *Quan v. Barr*, No.

20-cv-08118-LB, 2021 WL 308610, at *4 (N.D. Cal. Jan. 29, 2021) (citation and quotations omitted).  The reviewing court must bear in mind that "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017).  Courts may review an Immigration Judge's finding that an alien poses a flight risk for abuse of discretion.  *See Zaitsev v. Warden*, No. 2:26-cv-00454-SPG-AS, 2026 WL 391429, at *10 (C.D. Cal. Feb. 9, 2026) (collecting cases).

## DISCUSSION

Petitioner challenges the legal sufficiency of the two bond hearings she received.  She seeks immediate release from custody or, alternatively, a third bond hearing where Respondents bear the burden of proof.  (Pet. at 6; Reply at 8.) Respondents concede that Petitioner is detained pursuant to 8 U.S.C. § 1226(a), (MTD at 5), and further contend the bond hearings Petitioner received were constitutionally adequate.

Nonimmigrant students whose lawfully admitted status has lapsed and who have not obtained an extension are "deportable as an overstay." *Samimi v. I.N.S.*, 714 F.2d 992, 994 (9th Cir. 1983); 8 U.S.C. § 1227(b)(1).  Petitioner does not provide evidence that her lawful student status was ever extended, but assuming she did not receive an extension and is deportable, the Court must determine whether the Immigration Judge's conclusions as to her suitability for bond were legally deficient.

### I.  Administrative Exhaustion

Respondents first assert Petitioner should exhaust her administrative remedies before pursuing relief through a habeas petition.  (MTD at 4–5.)  The Court disagrees. Here, Petitioner is challenging the legal sufficiency of the hearings she received, and habeas review is appropriate so long as it is sufficiently independent of the merits of a removal order.  *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020). "Consideration by the Immigration Judge of . . . [a] request by respondent regarding custody or bond under this section shall be separate and apart from, and shall form

3

no part of, any deportation or removal hearing or proceeding."  8 C.F.R. § 1003.19(d). This matter is properly before the Court on habeas review, and the Court therefore declines to dismiss the Petition for failure to administratively exhaust remedies.

**II.  January 27, 2026 Dangerousness Finding**

An Immigration Judge's determination as to "custody status or bond may be based upon any information that is available to the Immigration Judge or that is presented to him or her by the alien or the Service."  8 C.F.R. § 1003.19(d).

Petitioner challenges the Immigration Judge's finding at her first bond hearing that she was a danger to the community based on the sole pending misdemeanor battery charge from December 2025.  (*See generally* Pet., Reply.)  Respondents assert that Petitioner merely disagrees with the Immigration Judge's weighing of the evidence as to danger.  The Court agrees with Respondents.

"The *Guerra* factor most pertinent to assessing dangerousness" is the detainee's "criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses." *Singh v. Holder*, 638 F.3d 1196, 1206 (9th Cir. 2011) (internal quotation marks omitted) (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)).  An Immigration Judge has broad discretion to consider evidence relevant to dangerousness, including evidence of unfavorable conduct and alleged criminal activity, but "such evidence must be considered with an eye to its probativeness." *Fuentes Reyes v. Wolf*, No. 2:19-cv-02086-GMN-EJY, 2020 WL 2308075, at *7 (D. Nev. May 8, 2020) (citations omitted).  In the absence of a conviction, an Immigration Judge must carefully "scrutinize 'evidence of criminality'[.]" *Id.*

Respondents point to *Matter of Thomas* as support for their argument the Immigration Judge properly weighed the evidence. (Sur-Reply at 3.)  In *Thomas*, the Board of Immigration Appeals held that "[w]hen an alien's conduct results in his having had contact with the criminal justice system or being placed in criminal proceedings, the nature of those contacts and the stage to which the proceedings

4

have progressed should be taken into account and weighed accordingly."  21 I. & N. Dec. 20, 24 (B.I.A. 1995).  The "probative value of and corresponding weight, if any, assigned to evidence of criminality will vary" according to the "nature and strength of the evidence presented."  *Id.*

Turning to the first bond hearing, the January 27, 2026 audio recording reflects that Petitioner's counsel acknowledged the pending misdemeanor charge, conceded that it was a "domestic dispute" between Petitioner and her 21-year-old daughter, and described it as "an argument that turned into something physical." (Jan. 2026 Audio Recording 2:30–3:20.)  Counsel also stated that the "daughter provided information to the state court and included it in the bond motion the fact that she is not pressing charges against her mother." (*Id.*)  Counsel asserted that Petitioner did not have any other incidents since entering the United States and that she was not a danger to the community.  Counsel last argued that Petitioner has "every reason" to attend immigration proceedings, that she has strong community ties in that she is employed and lives with her partner who is a legal permanent resident, and that they intend to get married. (*Id.*)

On rebuttal, Respondents argued Petitioner did not meet her burden to establish that she was not a danger to the community because the domestic violence battery charge was still pending.  At that point, the Immigration Judge asked for confirmation that the charge was indeed pending.  Counsel for Respondents asserted that it was and Petitioner's counsel acknowledged the charge would "likely" be dismissed and that Petitioner had not yet received a disposition prior to the bond hearing. (*See generally id.*)  Counsel for Respondents then pointed out that Petitioner's daughter "certainly didn't deny . . . the allegation that [Petitioner] battered her[.]" (*Id.* 6:10–20.)

In making her ruling, the Immigration Judge concluded that Petitioner had not met her burden to show she is not a danger to the community because she had "a pending battery charge in state court that has not been dismissed."  The Immigration

5

Judge also explained that while she "underst[ood] that [Petitioner's] daughter wrote the DA not wishing to press charges . . . it does not dispel the fact the police were called and [Petitioner] engaged in dangerous behavior . . . and that [Petitioner's] daughter was the victim." (*Id.* 9:00–10:05.)  The Immigration Judge did not reach the issue of flight risk in denying Petitioner's request for bond.

Although dismissed charges "are deemed relevant evidence regarding a determination of the potential danger [Petitioner] poses to the community," *Flores-Delgado v. Lynch*, No. 2:15-cv-01273-PHX-JAT, 2016 WL 2865872, at *7 (D. Ariz. May 17, 2016) (citation omitted), any such "untested criminal allegations" must have corroborating evidence demonstrating Petitioner's criminality, *Fuentes Reyes*, 2020 WL 2308075, at *10.

The Court concludes the Immigration Judge did not commit legal error in finding Petitioner was a danger.  "A willingness to strike loved ones offers probative evidence of a tendency to violence and dangerousness toward others." *United States v. Quartermaine*, 913 F.2d 910, 917 (11th Cir. 1990)).  Moreover, "it is well established that specific, probative, and reliable evidence of criminal conduct that has not produced a conviction may show that an individual poses a danger to the community." *Matter of Guerra*, 24 I. & N. Dec. at 40–41 (explaining that it is proper to consider both arrests and convictions); *see also Matter of Siniauskas*, 27 I. & N. Dec. 207, 208 (B.I.A. 2018) ("In bond proceedings, it is proper . . . to consider not only the nature of a criminal offense but also the specific circumstances surrounding the [noncitizen's] conduct.")  Here, the Immigration Judge identified that neither Petitioner nor her daughter contested the truth of the underlying allegation that Petitioner battered her adult daughter.  Even though this charge was ultimately dismissed because the daughter did not wish to prosecute her mother, the Immigration Judge's focus on Petitioner's violent physical conduct against a family member was sufficiently specific and probative of danger.  *Matter of Guerra*, 24 I. & N. Dec. at 40-41; *see Vera-Perez v. Garland*, No. 20-73247, 2022 WL 883742, at *1 (9th

6

Cir. Mar. 24, 2022) (finding no legal error where petitioner did not contest facts in arrest records and observing "[n]or is there an innocent explanation for battering one's [family member]"); *see also Matter of Jose Alejandro Rodriguez Pena*, 29 I. & N. Dec. 358, 360 (B.I.A. 2025) (reversing grant of bond where IJ did not fully consider circumstances of arrest in concluding petitioner was not a danger).

Petitioner's reliance on *Fuentes Reyes v. Wolf* does not alter the Court's conclusion. *Fuentes Reyes* has limited relevance because, in that case, the Immigration Judge erroneously relied on "non-probative evidence of [petitioner's] dangerousness to deny bond." 2020 WL 2308075, at *11. After stripping that legal error away, the district court reviewing the bond determination concluded that "a single arrest and conviction for misdemeanor battery is insufficient to support the denial of bond as a matter of law" and that it is "not a very serious crime under Nevada law, the INA, or federal case law." *Id.* at *8. But in *Fuentes Reyes*, unlike in this case, the *government* had the burden to show, by clear and convincing evidence, that petitioner was a danger.[1] The Immigration Judge there erred by not holding the government to the clear and convincing standard in concluding that petitioner's conviction was for a "very serious crime" when it was in fact for a misdemeanor with a 30-day sentence. *Id.* at *13. Because the bond determination "could easily have been different" had the Immigration Judge applied the correct standard (as understood at that time), the district court concluded that a new bond hearing was necessary. *Id.*

In contrast to *Fuentes Reyes*, here, the Immigration Judge did not apply the wrong standard and correctly determined that, under 8 U.S.C. § 1226(a), Petitioner has the burden of proof. (*See generally* Jan. 27, 2026 Audio Recording); *see also Rodriguez Diaz v. Garland*, 53 F.4th at 1210–11 (placing the burden of proof on the

---

[1] At the time *Fuentes Reyes* was decided, Ninth Circuit authority held that the government had the burden to show by clear and convincing evidence that a § 1226(a) detainee was a flight risk or danger at the time of the bond hearing. 2020 WL 2308075, at *8. This principle is no longer good law, foreclosed by *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1210–11 (9th Cir. 2022), and the burden of proof is properly on the Petitioner.

detainee for § 1226(a) bond hearing).  The Immigration Judge also assessed the circumstances surrounding Petitioner's arrest and found it significant that Petitioner did not dispute the truth of the underlying facts.  This evidence is sufficiently specific and probative to support a finding of danger, and the Immigration Judge did not err in so concluding.

The Court therefore concludes there was no legal error in the first bond hearing.

**III. March 25, 2026 Flight Risk Finding**

Petitioner next challenges the second bond hearing that she received and the Immigration Judge's finding that she was a flight risk.  Under the applicable federal regulations, after an initial bond determination, a noncitizen may request a subsequent bond determination upon a showing that "circumstances have changed materially" since the prior bond hearing.  8 C.F.R. § 1003.19(e).  Petitioner contends the March 25, 2026 bond hearing was constitutionally deficient because the Immigration Judge's reasoning regarding flight risk was "internally inconsistent and untethered from the actual record."  (Traverse (ECF No. 8) at 3.)  Petitioner recounts the evidence she believes "overwhelmingly demonstrated stability rather than flight risk."  (*Id.*)

In denying bond based on flight risk, the Immigration Judge made several findings.  (*See generally* March 25, 2026 Audio Recording; March 25 IJ Order, Ex. 4 (ECF No. 7) at 20.)  She identified that Petitioner had no immediate family members with status such that Petitioner would be able to derive status from them.  She acknowledged that  Petitioner was in a three-year relationship with her legal permanent resident partner and, accepting the representation that they intended to marry, she observed Petitioner would be subject to a higher standard to have her "form I-130" approved because she was in removal proceedings.[2]  As to whether the I-

---

[2] An I-130 form is a Petition for an Alien Relative, a form provided by the U.S. Citizenship and Immigration Services.  Petition for Alien Relative, https://www.uscis.gov/i-130 (last accessed July 7,

130 form would be approved or not, the Immigration Judge concluded a determination on that likelihood would be "speculative at this juncture" because the I-130 had not yet been filed.  The Immigration Judge also identified that Petitioner did not have a "lengthy employment history" because she began working as a caregiver in May 2024 after receiving work authorization in October 2023.  (*See generally* March 25, 2026 Audio Recording; Traverse at 2–3.)

The Immigration Judge further stated that while there was no record that a "I-589" application was filed, she accepted the representation by the parties that it had been filed but noted the application was not part of the bond hearing record.[3]  For that reason, because it was not part of the record, she concluded "it is speculative to discern the likelihood that Petitioner would be successful on any relief, including adjustment of status."  Later, the Immigration Judge acknowledged that Petitioner had community ties and letters from friends, but those "positive equities" did not outweigh the negative factors in this case.  (*Id.*)  Toward the end of the hearing, the Immigration Judge explicitly acknowledged that changed circumstances were present as to dangerousness because the district attorney had declined to press charges on the underlying battery allegation.  (*See generally* March 25 Audio Recording.)  In the IJ Order, the Immigration Judge also cites an absence of payment of taxes and evidence of where Petitioner lived with her partner prior to January 2024.  (*See generally* March 25 IJ Order.)

"Bond determinations depend heavily on the [noncitizen's] circumstances and the specific facts of the case, and any 'probative and specific' evidence may be considered in assessing whether his release on bond is warranted, including unfavorable evidence of his conduct.'"  *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 804–05

2026); *see also Mohamed v. Trump*, No. 19-cv-05558-JCS, 2025 WL 2494276, at *1–2 (N.D. Cal. Aug. 29, 2025) (explaining visa application process for form I-130).

[3] An I-589 form is an Application for Asylum and for Withholding of Removal, also available on the U.S. Citizenship and Immigration Services' website.  Application for Asylum, https://www.uscis.gov/i-589 (last accessed July 7, 2026).

(B.I.A. 2020). "The Immigration Judge is in the best position to analyze these considerations and 'may choose to give greater weight to one factor over others, as long as the decision is reasonable.'" *Id.* at 805. The factors the Immigration Judge may consider include:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Id.* The Immigration Judge may also consider the likelihood that relief from removal will be granted in determining whether an alien warrants bond. *Id.* To establish a due process violation, Petitioner must show that the findings were "so wholly inconsistent with the record that it rebuts the presumption that the [Immigration Judge] considered all the evidence." *Kharis v. Sessions*, No. 18-cv-04800-JST, 2018 WL 5809432, at *9 (N.D. Cal. Nov. 6, 2018). "Such indications include misstating the record and failing to mention highly probative or potentially dispositive evidence." *Id.* at *8.

The March 25 Audio Recording reflects that the Immigration Judge addressed a variety of factors in assessing Petitioner's flight risk. While Petitioner originally did have lawful status, she did not have any family members through whom she could derive status, including her lawful permanent resident partner who had not yet filed an I-130. The Immigration Judge also evaluated Petitioner's employment history and positive community ties. To be fair, the Immigration Judge did not discuss lack of criminal history apart from the dismissed battery charge and did not substantively address Petitioner's family commitments or community ties other than to note these positive equities did not outweigh the negative factors. But to the extent Petitioner

10

believes these gaps are dispositive, the Immigration Judge's "failure to mention relevant evidence, by itself, does not overcome th[e] presumption" that the Immigration Judge "did review the evidence." *Kharis*, 2018 WL 5809432, at *8.

As to Petitioner's applications for relief or adjustment of status, because the I-130 and I-589 were not part of the documentary record for the bond hearing, the Immigration Judge noted it would be speculative to consider Petitioner's likelihood of success on those applications. This observation is not the same as saying that Petitioner's likelihood of success on those applications is itself meritless but rather that it would be premature to take a position because the documents were not before her for consideration. The IJ Order reflects this understanding: "based on the documentary evidence, it remains unclear what relief [Petitioner] is seeking." (March 25 IJ Order at 1.) This is not error, such as a "misstatement of the law or the record in deeming . . . eligibility speculative." *Kharis*, 2018 WL 5809432, at *9. The Immigration Judge is entitled to weigh certain factors over others so long as the decision is reasonable. *Matter of R-A-V-P-*, 27 I. & N. Dec. at 805. Accordingly, the Court concludes that because the Immigration Judge was entitled to "place some weight on [various factors] in [her] analysis of flight risk, the Court generally lacks jurisdiction to review whether they placed too much." *Kharis*, 2018 5809432, at *8.

The Court therefore concludes that there was no legal error in the second bond hearing.

## ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1) is DENIED and Respondents' Motion to Dismiss (ECF No. 7) is GRANTED. The Clerk of Court is directed to CLOSE this case.

Dated:  July 9, 2026                    /s/ Daniel J. Calabretta

                                        THE HONORABLE DANIEL J. CALABRETTA
                                        UNITED STATES DISTRICT JUDGE